## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF DELAWARE

| | |
|---|---|
| TRUSTEES OF THE NATIONAL ASBESTOS WORKERS MEDICAL FUND, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. ) |
| UTC LABORATORIES, L.L.C., | ) ) ) |
| Defendant. | ) |

## COMPLAINT

This Complaint is an action brought by the Trustees of the National Asbestos Workers Medical Fund for the recovery of plan assets, monetary damages, injunctive relief, attorneys' fees and costs, and other available relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), in connection with UTC Laboratories, LLC's breach of fiduciary duty, conversion and unjust enrichment.

## PARTIES

1. Plaintiff National Asbestos Workers Medical Fund (the "Fund") is an employee benefit plan as that term is defined in Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Fund is a multiemployer plan as that term is defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The Fund was established and is maintained in accordance with its Restated Agreement and Declaration of Trust. The Fund is administered by the Trustees at its principal place of business located at 7130 Columbia Gateway Drive, Suite A, Columbia, Maryland 21046. The Trustees are designated fiduciaries in accordance with the Fund's Restated Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

2. Upon information and belief, Defendant UTC Laboratories, LLC, d/b/a Prima Health ("UTC") is a medical services provider and limited liability company organized under the laws of Delaware, whose registered agent is located at the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under Sections 502(a)(2), (3) and (f) of ERISA, 29 U.S.C. §§ 1132(a)(2), (3) and (f), 28 U.S.C. § 1331, and over state law causes of action pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate in this Court pursuant to Section 502(e) of ERISA, 29 U.S.C. § 1132(e) as well as 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Terms and conditions for the Plaintiff Fund's payment of benefits are set forth in the Fund's Summary Plan Description, which also serves as the Fund's Plan Document ("Plan Document"). Only eligible participants and their dependents are entitled to have medical benefits paid on their behalf by the Plaintiff Fund.

6. On or about April 24, 2017, the Plaintiff Fund received an invoice from Defendant UTC erroneously claiming that it had treated one of the Fund's eligible participants, with dates of service occurring on December 20, 2016 and December 26, 2016. The total amount billed was $40,069.44.

7. Based on Defendant UTC's inaccurate representation that it had treated one of the Plaintiff Fund's eligible participants, the Fund paid UTC $25,845.15 by check dated April 24, 2017.

8.  On May 3, 2017, the Plaintiff Fund's participant whom Defendant UTC claimed to have treated on December 20, 2016 and December 26, 2016 informed the Fund that he did not receive any services or treatment from UTC on the dates claimed.

9.  Consequently, on that same date and again on May 4, 2017, the Plaintiff Fund contacted Defendant UTC to inquire about these inaccurate billings and unwarranted payment. On those dates, a representative from UTC claimed that the participant had been referred to it by Dr. Michael Valdez of Paragon Recovery.

10. Defendant UTC additionally claimed that the same patient had received treatment with a date of service on December 23, 2016, which had apparently been paid by an entity other than the Fund. When the Fund asked UTC for the identity of the entity who paid the claim for this date of service, UTC refused to provide the requested payee information.

11. When the Plaintiff Fund contacted Paragon Recovery on or about May 4, 2017, it apparently claimed that it was not familiar with UTC Laboratories, but confirmed that Dr. Valdez worked at the facility. Paragon Recovery additionally noted that it had a patient with a name very similar to the Fund's participant.

12. On June 13, 2017, the plaintiff Fund sent a written demand to Defendant UTC for the repayment of the $25,845.15 due to the fact that any such services that it claimed to have rendered were not for an eligible Fund participant.

13. On June 19, 2017, Fund Claims Manager, Raquel O. Ly ("Ms. Ly") contacted UTC Laboratories Director of Revenue Cycle, Desiree Lidstone ("Ms. Lidstone"), who acknowledged receipt of the Fund's letter and requested proof of the Fund's payment of $25,845.15.

14. Ms. Ly e-mailed Ms. Lidstone proof of the $25,845.15 payment on the same date.

15. Ms. Ly called Ms. Lidstone on July 17, 20, 24, 26, and 28, 2017 to request an update on the reimbursement demand, but received no response.

16. Accordingly, on October 13, 2017, Fund counsel sent a second and final reimbursement demand to UTC via UPS Next Day Air. The same was e-mailed to Ms. Lidstone on October 11, 2017.

17. To date, neither the Plaintiff Fund nor Fund counsel has received any response from Defendant UTC.

18. Upon information and belief, Defendant UTC took the mistaken payment amount from the Fund for its own use and continues to retain these Fund assets notwithstanding the fact that it did not provide any services to any Fund participant.

## COUNT I – BREACH OF FIDUCIARY DUTY

19. The Plaintiff Fund hereby adopts, incorporates, and restates in Count I paragraphs 1 through 18 above.

20. Upon information and belief, Defendant UTC is a medical services provider that treated a patient who was not a participant of the Plaintiff Fund on December 20, 23, and 26, 2016.

21. Defendant UTC improperly billed the charges for such services to the Plaintiff Fund.

22. On April 24, 2017, the Plaintiff Fund paid $25,845.15 to Defendant UTC in satisfaction of the assessments it improperly levied upon the Fund.

23. As a result of the mistaken payment, Defendant UTC is holding and exercising authority and control over plan assets of the Fund in the amount of $25,845.15 to which it is not entitled.

24.     Article II, Section 2(6) of the Restated Agreement and Declaration of Trust of the Fund defines the plan assets of the Fund to include "supplies, property and other assets used by the Trustees in the administration of the Fund."

25.     In its capacity as the holder of the $25,845.15 in plan assets to be used exclusively for the administration of the Plaintiff Fund within the meaning of the Trust Agreement of the Fund, Defendant UTC is acting as a "fiduciary" of the Fund within the meaning of ERISA §3(21), 29 U.S.C. §1002(21).

26.     By holding the mistaken payment for its own benefit, exercising authority and control over plan assets, failing to hold the plan assets in trust for the exclusive purpose of providing benefits to the *bona fide* participants and dependents of the Fund, and refusing to return the payment to the Plaintiff Fund, Defendant UTC has breached and is continuing to breach the fiduciary duties prescribed by ERISA § 404 that it owes to the Fund, 29 U.S.C. § 1104 and is in violation of ERISA § 409, 29 U.S.C. § 1109.

**WHEREFORE**, in Count I, the Plaintiffs pray Judgment as follows:

A. That Defendant UTC be liable to restore the losses to the Plaintiff Fund and to restore any profits it may have made through the use of the assets of the Fund resulting from his retention and use of $25,845.15 of the plan assets of the Fund; and

B. Defendant UTC is ordered to make full restitution of the $25,845.15 to the Fund, plus attorney's fees, interest and costs; and

C. Such further equitable and remedial relief as the Court deems proper.

## COUNT II – INJUNCTIVE RELIEF

27.     The Plaintiff Fund hereby adopts, incorporates, and restates in Count II paragraphs 1 through 26 above.

5

28. This Court has jurisdiction of this action under §§ 502(a)(2), (3), and (f) of ERISA of 1974, 29 U.S.C. §§ 1132(a)(2),(3), and (f). This is an action to enjoin violations of the terms of employee benefit plans.

29. Defendant UTC, contrary to the Restated Agreement and Declaration of Trust establishing the Plaintiff Fund, is holding the plan assets of the Fund and exercising control for its own use and benefit.

30. Defendant UTC has repeatedly failed to return or hold safe the assets of the Fund in violation of the requirements of the aforementioned Restated Agreement and Declaration of Trust of the Fund.

**WHEREFORE**, in Count II Plaintiff Fund prays judgment as follows:

A. For a Court Order enjoining violations of the terms of the Plaintiff employee benefit plan and requiring Defendant UTC to return the assets of the Fund to the Plaintiff Fund.

B. For such further relief as the Court may deem appropriate.

### COUNT III- CONVERSION AND UNJUST ENRICHMENT

31. The Plaintiff Fund hereby adopts, incorporates, and restates in Count III paragraphs 1 through 30 above.

32. Upon information and belief, Defendant UTC wrongly obtained possession and control over the Plaintiff Fund's payment.

33. The money the Plaintiff Fund mistakenly paid to Defendant UTC belongs to the Fund.

34. The Plaintiff Fund has attempted to contact Defendant UTC and demanded that it return the payment mistakenly made.

35. Defendant UTC has failed to return the mistaken payment to the Fund.

36. The sum of $25,845.15 paid to Defendant UTC by the Plaintiff Fund was paid under a mistake of fact, as UTC improperly assessed medical charges on behalf of an individual it falsely claimed was a participant of the Fund.

37. Defendant UTC at no time had a reasonable expectation to retain the benefits mistakenly paid to it by the Plaintiff Fund.

38. Defendant UTC is not entitled to the payment from the Plaintiff Fund.

39. Title and the right of possession of the payment, in the amount of $25,845.15, by the Plaintiff Fund rightfully belongs to the Fund.

40. The Plaintiff Fund has not intentionally relinquished title and the right of possession to the mistaken payment, and has been damaged by Defendant UTC's fraud and other actions in the amount of $25,845.15.

41. The money paid by the Plaintiff Fund in equity and fairness belongs to the Fund.

42. The circumstances under which Defendant UTC accepted the payment from Plaintiff Fund are such that it would be inequitable and unfair for UTC to retain the benefit of the funds without paying value therefore.

43. Defendant UTC has exercised wrongful dominion and control over the payment from the Fund to the exclusion of and in defiance of the Plaintiff Fund's rights.

44. Defendant UTC's continued wrongful taking and retention of the $25,845.15 payment from the Plaintiff Fund constitutes an illegal assumption of the Fund's rights and a wrongful taking, detention and interference in the Fund's ownership rights to the funds.

**WHEREFORE**, in Count III, the Plaintiff prays judgment as follows:

A. Judgment against Defendant UTC in the amount of $25,845.15;

B. Interest on this amount to the date of judgment;

C. Attorney's fees and costs; and

D. Such other and further equitable relief as the Court deems just and proper.

## COUNT IV – CLAIM FOR MONEY HAD AND RECEIVED

45. The Plaintiff Fund hereby adopts, incorporates, and restates in Count IV paragraphs 1 through 44 of above.

46. The Plaintiff Fund has an obligation to pay to benefits on behalf of its eligible participants and dependents.

47. The Plaintiff Fund, upon a mistake of fact, paid UTC $25,845.15 for treatment of an individual Defendant UTC erroneously claimed was an eligible participant of the Fund.

48. Defendant UTC wrongly obtained possession and control over the Fund payment.

49. As a result of the mistaken payment, Defendant UTC holds money, which in equity and good conscience belongs to the Plaintiff Fund.

**WHEREFORE**, in Count IV, the Plaintiff prays judgment as follows:

A. Judgment against Defendant UTC in the amount of $25,845.15;

B. Interest on this amount to the date of judgment;

C. Attorney's fees and costs; and

D. Such other and further equitable relief as the Court deems just and proper.

Respectfully submitted,

Dated: November 29, 2017

By: */s/ Charles W. Gilligan*
**O'DONOGUE & O'DONOGUE, LLP**
Charles W. Gilligan
Kathleen Bichner
5301 Wisconsin Avenue, Suite 800
Washington, DC 20015
T: 202-362-0041
F: 202-362-2640

cgilligan@odonoguelaw.com
kbichner@odonoguelaw.com

*Pro Hac Vice (Pending) Attorneys for
Plaintiffs Trustees of the
National Asbestos Workers Medical Fund*


By:   */s/ Lance Geren*
**FREEDMAN AND LORRY, P.C.**
Lance Geren
1601 Market Street, Suite 1500
Philadelphia, PA 19103
T: 215-931-2573
F: 215-925-7516
lgeren@freedmanlorry.com

*Local Counsel for for
Plaintiffs Trustees of the
National Asbestos Workers Medical Fund*

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Complaint has been served by certified mail, as required by § 502(h) of the ERISA, 29 U.S.C. § 1132(h), this 29th day of November 2017 on the following:

    United States Department of Labor
    200 Constitution Avenue N.W.
    Room S-2002
    Washington, DC 20210

    United States Department of the Treasury
    1500 Pennsylvania Avenue, N.W.
    Room 3330
    Washington, DC 20220

By:_____
*Attorney for Plaintiffs*